UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Samantha Jeanne Gilmore, | ) | Civil Action No.: 5:18-cv-0044-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Nancy A. Berryhill, Acting Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the Report and Recommendation ("R&R") of United States Magistrate Judge Kaymani D. West. [ECF No. 21]. The Magistrate Judge recommends the Court affirm Acting Commissioner of Social Security Nancy A. Berryhill's (the "Commissioner") decision denying Plaintiff Samantha Jeanne Gilmore's claim for disability insurance benefits ("DIB") pursuant to the Social Security Act of 1935, 42 U.S.C. § 401–433, (the "Act").

**Background**

Unless otherwise noted, the following background is drawn from the R&R.

**A.     Procedural History**

On November 19, 2014, Gilmore filed an application for DIB, alleging her disability began on October 1, 2013. The Social Security Administration denied her claim initially and on reconsideration. Gilmore requested a hearing before an administrative law judge ("ALJ"), and ALJ Ethan A. Chase held a hearing on September 8, 2016.

The ALJ issued a decision on January 13, 2017, finding that Gilmore was not disabled under the Act. The Appeals Council denied Gilmore's request for review, rendering the ALJ's decision the final action of the Commissioner. On January 5, 2018, Gilmore filed this action seeking review of the

ALJ's decision. The Magistrate Judge issued the R&R on January 14, 2019, recommending that the Court affirm the ALJ's decision. On January 29, 2019, Gilmore filed late objections to the R&R [ECF No. 24] and contemporaneously filed a motion for an extension of time to filed the objections, which the Court granted. On February 6, 2019, the Commissioner responded to Gilmore's objections. [ECF No. 29]. The matter is now ripe for the Court's review.

### B. Medical History

Because Gilmore's medical history is not directly at issue here, the Court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Gilmore was born on April 27, 1973, and was 43 years old on the date last insured. Tr. 34. She communicates in English and completed high school but has no other degree. *Id.* Her past relevant work experience was as a day care worker, a cashier, and a grocery cashier. *Id.*

### C. ALJ's Findings

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an illness contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents her from performing past relevant work; and (5) if so, whether the claimant is able to

2

perform other work considering both her remaining physical and mental capacities (defined by her residual functional capacity) and her vocational capabilities (age, education, and past work experience) to adjust to a new job. *See* 20 C.F.R. § 404.1520; *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

The ALJ employed the five-step analysis to determine whether Gilmore was disabled from October 1, 2013, through the date last insured, December 31, 2016. Tr. 27. The ALJ first determined that Gilmore did not engage in substantial gainful activity during the period at issue. *Id.* At the second step, the ALJ found that Gilmore suffered from the following severe impairments: cervical degenerative disc disease, tremor, and headaches. *Id.* At step three, the ALJ found that Gilmore's impairments or combination of impairments did not meet or equal one of the listed impairments in the Agency's Listings of Impairments. Tr. 29; *see* 20 C.F.R. Part 404, Subpt. P, App'x 1. Before reaching the fourth step, the ALJ determined Gilmore had the residual functional capacity ("RFC") to perform sedentary work with several limitations. Specifically, the ALJ found that Gilmore: (1) could lift and carry up to ten pounds occasionally and lesser amounts frequently, sit for six hours in an eight-hour day, and stand and walk occasionally; (2) could perform postural activities frequently but could never climb ladders, ropes, or scaffolds; (3) could frequently reach, handle, and finger, but only occasionally reach overhead; and (4) needed to avoid bright and flashing lights or similar visual stimuli and avoid no more than a moderate noise level. Tr. 30. At step four, the ALJ found that Gilmore was not capable of performing her past relevant work because the physical demands of those jobs exceeded her RFC. Tr. 34. Finally, at step five, the ALJ determined that, considering Gilmore's age, education, work

3

experience, and RFC, she could perform jobs existing in significant numbers in the national economy, concluding that she was not disabled during the period at issue. Tr. 35–36.

## Standards of Review

### A.     R&R

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must conduct a *de novo* review of those portions of the R&R to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). However, the Court need not conduct a *de novo* review of "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Also, objections that merely rehash arguments previously raised and considered by the Magistrate Judge are insufficient to direct the Court to a specific error. *Weber v. Aiken-Partain*, C/A No. 8:11-cv-02423-GRA, 2012 WL 489148, at *2 (D.S.C. Feb. 15, 2012). In the absence of specific objections to the R&R, the Court reviews only for clear error, *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

### B. ALJ's Decision

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays*, 907 F.2d at 1456. When reviewing for substantial evidence, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### **Discussion**

Gilmore objects to the Magistrate Judge's recommendation that the ALJ properly evaluated: (1) opinion evidence from consultative examiner Dr. Maguire; (2) Gilmore's RFC with respect to her upper extremities; and (3) the impact of headaches on her RFC.

### A. Dr. Maguire's Opinion

Gilmore objects to the Magistrate Judge's conclusion that the ALJ gave "specific reasons" for finding that Dr. Maguire's opinion limiting Gilmore to "no reaching in any direction bilaterally" lacked "support and consistency with the evidence in the record," asserting that "the only reason" the ALJ gave for dismissing Dr. Maguire's opinion is "Gilmore's testimony that she occasionally had difficulties

5

reaching out to the sides." Objs. at 4–5. Gilmore contends that the weight the ALJ assigned to Dr. Maguire's opinion is not supported by substantial evidence and the ALJ "fails to explain why he accorded more weigh[t] to Gilmore's testimony than physical exam findings." Objs. at 5–6.

The ALJ must consider and weigh all medical opinions in a claimant's case. 20 C.F.R. § 404.1527(c). "[A]bsent some indication that the ALJ has dredged up specious inconsistencies . . . or has not given good reason for the weight afforded to a particular opinion[,]" the Court will not disturb an ALJ's determination on the weight to be assigned to a medical opinion. *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992); 20 C.F.R. § 404.1527(d)). Generally, an ALJ should give a treating physician's opinion controlling weight if the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" within the record. 20 C.F.R. § 404.1527(c)(2).

As the R&R notes, Dr. Maguire was not Gilmore's treating physician; therefore, although the ALJ was required to evaluate Dr. Maguire's opinion, his opinion was not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c). Despite Gilmore's assertion to the contrary, the R&R correctly notes that the ALJ properly considered Dr. Maguire's consultative opinion and gave specific reasons for according it partial weight. R&R at 21–22. The ALJ found "no evidence in the record," including Gilmore's testimony and her medical notes, to support Dr. Maguire's "significant restrictions in . . . reaching." Tr. 34. In reaching this conclusion, the ALJ considered the medical evidence from Gilmore's treatment notes: (1) in February 2014, Gilmore's "upper extremity strength, sensation, and range of motion were completely intact" despite "a limited range of motion in her neck"; (2) in November 2014, Gilmore "exhibited diminished sensation in her cervical spine region but . . . displayed 5/5 strength in her left upper extremity"; and (3) at a November 2016 consultative examination following an April 2015

6

surgery, Gilmore's "grip strength was normal bilaterally and there was no evidence of atrophy in any extremity" despite a "decreased range of motion in the cervical spine and shoulders[.]" Tr. 31. Accordingly, the ALJ properly assessed Dr. Maguire's opinion and sufficiently explained his reason for according it partial weight, and the ALJ's findings are supported by substantial evidence.

### B. Upper Extremities RFC

As to her upper extremities RFC, Gilmore's objection argues the ALJ: (1) failed "to properly explain an RFC that included an ability to frequently reach in all direction[s] except overhead given the evidence that Gilmore had a markedly reduced range of motion of her neck and limited range of motion of both shoulders"; (2) failed "to consider Gilmore's testimony that she had pain raising her arms to shoulder level, consistent with Dr. Maguire's finding that Gilmore was in tears when trying to lift her left shoulder"; (3) erred "in finding Gilmore could perform work that required frequent handling and fingering given her problems with buttoning and picking up small objects and her reduced strength in finger flexion"; (4) made erroneous findings on Gilmore's limitations on her ability to reach, handle, and finger because "the limitations are not what Plaintiff wanted," and are not supported by substantial evidence or properly explained; and (5) failed "to explain how marked limitation in range of motion and a fairly pronounced tremor in the dominant hand are consistent with frequent reaching, handling, and fingering." Objs. at 1–2.

RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996). An ALJ's RFC determination assesses a claimant's "remaining capacity to do sustained work activities despite his physical or mental impairments." *Ladda v. Berryhill*, 749 F. App'x 166, 169 (4th Cir. 2018) (citing 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945). In assessing RFC, the ALJ must consider "all relevant evidence in [the] record." 20 C.F.R. § 404.1545(a)(1).

7

"As part of this determination, the ALJ must assess the credibility of any subjective statements by the claimant about [her] symptoms" and "explain his assessment." *Ladda*, 749 F. App'x at 169–70 (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 96-8p at *7). A "symptom" is the claimant's "own description or statement of his or her physical or mental impairment(s)." SSR 16-3P, 2016 WL 1119029, at *2 (Mar. 16, 2016). The claimant's "statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." *Id.* When evaluating a claimant's subjective statements about impairments and symptoms, the ALJ must: (1) first consider "the objective medical evidence to determine whether the medical impairments 'could reasonably be expected to produce the pain or other symptoms alleged'"; then (2) evaluate the "intensity and persistence" of those symptoms and determine "the extent to which [those] symptoms limit [the claimant's] capacity for work." *Ladda*, 749 F. App'x at 170 (citing 20 C.F.R. §§ 404.1529, 416.929; *Lewis v. Berryhill*, 858 F.3d 866 (4th Cir. 2017)); *see* SSR 16-3P at *2.

With respect to Gilmore's testimony and what she requested, the ALJ accorded great weight to Gilmore's treatment notes and medical evidence showing intact upper extremity strength, sensation, and range of motion despite diminished sensation around her cervical spine and decreased range of motion. Tr. 31. The ALJ found that Gilmore's medical impairments "could reasonably be expected to cause the alleged symptoms[,]" but that her "statements concerning the intensity, persistence and limiting effect of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained" in the ALJ's decision." Tr. 32. With respect to Gilmore's tremor, the ALJ accounted for: (1) Gilmore's February 2015 treatment notes where she reported occasional difficulty holding utensils and writing, an MRI scan revealing no central nervous system issue or tremor etiology, and an examination showing her grip strength to be normal with a 5/5 rating of upper extremity strength and no evidence of atrophy; (2) a November 2016 consultative examination where

8

Gilmore exhibited a right arm and hand resting tremor that worsened when she raised her arm for a blood-pressure check; and (3) Gilmore's testimony that she had difficulty using her hands only once per month. Tr. 32, 33. "Following a through review of the evidence[,]" the ALJ found that Gilmore's "reports to her treating and examining physicians, as well as findings upon objective examination, were generally inconsistent with [her] testimony of such significant complaints of pain and dysfunction." Tr. 32. The ALJ specifically noted that Gilmore "reported that she was able to perform household chores, take care of personal hygiene, shop for groceries, and drive a motor vehicle, activities which generally reveal functioning at a greater level than alleged." Tr. 32. As a result, the ALJ found that "these activities, when viewed in conjunction with the other inconsistencies regarding the claimant's allegations of pain and dysfunction, further limit [her] persuasiveness in discussing her symptoms." Tr. 32. Furthermore, the ALJ noted that at Gilmore's administrative hearing, she testified that she would have continued working at her last job in a daycare if there was a position there that did not require lifting more than ten pounds, raising no work-preclusive issues with respect to her reaching, handling, or fingering. Tr. 33. Consequently, the ALJ concluded that Gilmore's "allegations of a total inability to work were overstated and unsupported by the medical evidence of record." Tr. 33. Accordingly, the ALJ sufficiently explained his findings on Gilmore's upper extremities RFC and properly evaluated Gilmore's testimony, and his findings are supported by substantial evidence.

### C. Impact of Headaches on RFC

With regard to impact of headaches, Gilmore's objection is based on the ALJ's alleged failure to explain: (1) "how a severe impairment of migraine headaches only caused mild difficulties in concentration, persistence, and pace"; and (2) "why he found the reported migraine triggers were worthy of consideration, but not the reported frequency of the migraines." Objs. at 3, 4. Gilmore questions the Magistrate Judge's explanation for finding no error in the ALJ's application of the special technique

used for evaluating the severity of mental impairments because of this passage in the R&R:

> Here, the ALJ was making functional limitation findings related to the severity of mental impairments—*not [Gilmore's] physical impairment*. The ALJ had already established that Plaintiff's headaches were a severe impairment. By referencing the headaches in the special technique, he was attributing the mild limitation in that category to a *physical rather than mental impairment*.

R&R at 16 (emphases added).

The ALJ found at step two that Gilmore's headaches were a severe physical impairment under 20 C.F.R. § 404.1520(c). In assessing the severity of Gilmore's mental impairments for depression and anxiety under 20 C.F.R. § 404.1520a, the ALJ applied the special technique provided in § 404.1520a(b)–(e) to rate her degree of functional limitation in four functional categories. Tr. 28–29. One of these four functional areas is limitation in concentration, persistence, and pace, which is rated on a five-point scale from "none" to "extreme." C.F.R. § 404.1520a(c)(3), (4). The ALJ rated Gilmore's limitation in concentration, persistence, and pace as "mild" based on her headaches—specifically, her testimony that although she suffered migraine pain "2–3 times per week that lasted 2–4 days[,]" she nevertheless was able to "sustain function over an 8-hour day." Tr. 28, 29. The ALJ did not provide any additional support or explanation for this finding. The ALJ concluded that Gilmore was not disabled due to any mental impairment, in part based on a finding that Gilmore's headaches caused only a mild limitation. This finding is difficult to reconcile with the ALJ's prior finding of headaches being a severe physical impairment, in addition to the fact that he accounts for Gilmore's headaches in her RFC. Therefore, this Court is unable to conclude whether substantial evidence supports the ALJ's findings on Gilmore's headaches and RFC. Accordingly, the Court remands this case to make further findings consistent with this order.

## **Conclusion**

The Court has thoroughly reviewed the entire record as a whole, including the administrative

transcript, the briefs, the Magistrate Judge's R&R, Gilmore's objections to the R&R, the Commissioner's response to the objections, and the applicable law. For the foregoing reasons, the Court respectfully rejects the recommendation of the Magistrate Judge. [ECF No. 21]. This action is remanded to the Commissioner to properly evaluate Gilmore's RFC, including to reconsider and explain the impact of Gilmore's headaches consistent with the analysis above. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g), and the case is **REMANDED** to the Commissioner for further administrative action.

**IT IS SO ORDERED.**

Florence, South Carolina  
March 29, 2019

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge